DAVID McPHERSON, Respondent, *v.* CHARLES COX and OTHERS, Owners of the Bark "CHARLES COX," Appellants.

*Master of vessel—power of·to agree that a dispute as to the construction of a charter-party shall abide the decision of a pending suit—what acts do not amount to a duress.*

The defendants chartered to the plaintiff a bark owned by them, for a voyage from Charleston, S. C., to Liverpool, for a sum named in the charter-party, agreeing that if there should be any excess in the freight on the cargo procured by the plaintiff over the amount so specified, it should be settled at Charleston, before the vessel sailed, by the master giving his draft for such excess, payable ten days after the vessel's arrival at Liverpool. A dispute having arisen as to the amount of such excess, and the manner of computing the freight on the cargo, the plaintiff, who was also the agent of the owners at Charleston, refused to allow the vessel to clear from the port unless the master would give a draft for the excess, as computed by him, and sign an agreement that the question involved should abide the decision of the United States Court in Charleston, in a case then pending, and which was claimed to involve the same question. The master having given the draft and signed the agreement as required, and the United States court having decided the case referred to in accordance with the plaintiff's claim, the latter brought this action to recover the amount due upon the draft.

*Held,* that the master had, under the circumstances, power to make the said agreement.

That he did not sign the same under duress.

That the plaintiff was entitled to recover.

Appeal from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought upon a bill of exchange made by the master of the defendants' vessel, and an alleged contemporaneous agreement between the master and the plaintiff, as the charterer of the vessel, providing that the differences between them in reference to the construction of certain clauses in the charter-party should abide the event of the decision of the "United States Court at Charleston," in the case of the barkentine *Kiota.*

The charter was for a voyage from Charleston, South Carolina,

to a direct port, either Liverpool or Havre, with a cargo of cotton, or other lawful merchandise; the plaintiff agreeing to pay to the defendants for the use of the vessel the round sum of £1,350 sterling. Bills of lading were to be signed without prejudice to the charter, and the difference between the bills of lading and the charter-party was to be settled at Charleston before the sailing of the vessel, in accordance with the rates of freight, and weight, gauge or measurement, expressed in the bills of lading. If the difference should be in vessel's favor it was to be paid in cash. If in the charterer's favor—that is, if the freight on the cargo secured by him exceeded the charter money, it was to be paid by the captain's bill of exchange, payable ten days after the arrival at the port of discharge.

After the cargo was on board, and the vessel ready to sail, the plaintiff, who was also the agent of the vessel, calculated the freight upon the alleged gross weight of the cotton shipped at Charleston, and from the total amount so arrived at he deducted the charter money of £1,350, and requested the master's signature to a bill of exchange for the difference between those two sums, viz.: £627, 2s. 7d. The master objected to that method of calculation, and refused to sign the bill of exchange, for the reason that the cargo was to be transported to Liverpool and the freight collected there, where, according to the universal custom in that port, freight was collectible only on the net weight of cotton delivered. Therefore, the master would be unable to collect the amount of freight which the plaintiff charged to the vessel in his calculation, and consequently the owners would not realize the whole charter money stipulated for in the charter-party, but on the contrary a sum considerably less; that is to say, they would lose the difference between the amount of freight estimated upon the gross weight shipped, and the amount collectible on the net weight delivered. That difference amounted in this case to the sum in controversy in this action.

The plaintiff insisted that the settlement should be made without reference to the amount of freight collectible at Liverpool, and he tendered to the captain for signature a bill of exchange for the amount claimed by him, together with an agreement to have the question involved abide the event of the decision of the United States court in Charleston, in the case of the barkentine *Kiota*;

and the plaintiff refused to allow the vessel to clear the port unless the bill of exchange and agreement were signed. The master finally signed the bill of exchange and the agreement. The whole amount of freight which could be collected at Liverpool was £1,893 13*s.* 5*d.* That amount exceeded the charter money by £543 7*s.* 7*d.* only, which sum was paid to plaintiff on account of the bill of exchange.

The recovery in this action is the difference between the amount of freight actually collectible under the bills of lading at the port of discharge, and the freight on gross weight shipped as computed by plaintiff at Charleston.

*Joseph A. Shoudy,* for the appellant.

*William W. Goodrich,* for the respondent.

BARRETT, J. :

In our judgment, the interpretation placed upon the contract in question by the learned counsel for the defendants is a correct one. It was never the intention to charge the owners of the vessel with the diminution of freight, resulting from the custom of the port of Liverpool. The owners were to receive for their vessel the full, round sum of £1,350. The bills of lading were to be signed *without prejudice to the charter.* Under the construction contended for by the plaintiff, these words "without prejudice to the charter" are in effect eliminated, and the owners are to receive less than the £1,350. It is true that the charter-party provided for the settlement of any difference between it and the bills of lading at Charleston, before the vessel sailed, in accordance *with the rates of freight and weight,* gauge or measurement *expressed in the bills of lading.* But this simply furnished a basis for calculation. It did not throw upon the vessel the burden of the Liverpool custom. The contract must be considered in its entirety and full effect given to all its provisions. No construction does this, which directly or indirectly deprives the owners of any part of the £1,350 specifically agreed to be paid for the use of their vessel. Further, the gross weight was not, as a matter of fact, expressed in the bills of lading. If its insertion had been insisted upon by the

charterer for the purpose of depriving the owners of their just rights under a strained and narrow construction of the clause in question, the captain would have been justified in "expressing" as well the Liverpool net weight.

The difficulty in the case, however, lies in the giving of the bill of exchange and the signing of the arbitration agreement. We have no doubt of the captain's power to do this under the circumstances. There was no duress. That possibly might have been predicated of an independent demand for the bill of exchange, under penalty of the stoppage of the vessel. But that was not what the charterer did. His good faith in making the claim is not questioned. It was not put forward fraudulently or oppressively, but because he honestly believed that he was right in his construction of the charter-party. He certainly was entitled then and there to an adjudication upon the question. Such an adjudication would naturally have been obtained in the federal court at Charleston. It would probably have involved the libeling of the vessel and entailed delay and expense, highly prejudicial to both parties. A similar question was then pending in a case in the United States Court, the same court to which the charterer here would have had a right to resort. Under these circumstances, he proposed that the disputed question should abide the decision in such case. The proposition was accepted, though reluctantly, and an agreement to that effect was signed. The decision in the pending case was favorable to the charterer's view, and we see no escape from the conclusion that the defendants must submit thereto. Various objections are urged to defeat the effect of this decision, but they are as strained and narrow (*e. g.*, that the submission was as to a barkentine, while the decision was· as to a bark) as the plaintiff's contention with respect to the charter-party. There can be no doubt that the facts in the test case were substantially the same as in this. Of that, too, the captain could have assured himself before he signed the agreement. What, then, the charterer said was, not that he would detain the vessel until the captain signed the bill of exchange, but in effect that he would maintain his position and claim his legal rights, unless the captain consented to a speedy, practical and inexpensive, though not direct, method of obtaining

the opinion of the proper court upon the disputed point. That cannot be said to amount to duress in any just sense of the term. It follows that the defendants are bound by the decision. The result is undoubtedly the same as though they had been subjected to a protracted litigation in the same court.

We are, therefore, constrained to affirm the judgment appealed from.

DAVIS, P. J., concurred.

Present—DAVIS, P. J., and BARRETT, J.

Judgment affirmed, with costs.